**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 05-CV-246-JBC

LELAND B. HOLLIS                                                                    PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA, ET AL.                                       DEFENDANTS

Leland B. Hollis, who is confined at the Federal Medical Center (FMC) in Lexington, Kentucky, has filed a *pro se* civil rights complaint under 28 U.S.C. § 1331 pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and the Federal Tort Claims Act, 26 U.S.C. § 2671-80 ("FTCA"). The complaint is accompanied by a motion to proceed *in forma pauperis*, which will be granted by separate order.

This matter is before the court for initial screening. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

CLAIMS

The plaintiff, who is in the custody of the Federal Bureau of Prisons ("BOP"), alleges that while he was previously incarcerated in Kentucky, the medical care which he received for an injury to his leg (1) was negligent and deviated from acceptable professional standards; and (2) evidenced the defendants' deliberate indifference to his

serious medical needs, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

DEFENDANTS

As defendants, the plaintiff names the United States of America; the Department of Justice; the BOP; BOP Director Harley Lappin; the following staff at FMC-Lexington:  Warden Mary Thoms, Dr. Growse, Dr. Linda de Hoyos, Dr. Vibeke Dawnka, and Physician's Assistant ("PA") Phillip Lafleur; a University of Kentucky orthopedist, Dr. Vaughn; and the following personnel at the Federal Prison Camp ("FPC") in Manchester, Kentucky:  Dr. Gonzales, PA Coldiron, and Warden John Doe. The plaintiff specifies that they are sued in their individual and official capacities.

RELIEF REQUESTED

The plaintiff seeks injunctive relief, in the form of appropriate treatment for his left leg, and damages.

BACKGROUND

The plaintiff has been before this court previously with regard to the medical treatment provided for his leg injury. On October 1, 2004, the plaintiff filed a complaint urging both the *Bivens* and FTCA claims, in *Hollis v. Thoms, et al.*, E.D.Ky. No. 04-CV-441-JMH.  Upon screening, the court granted him permission to proceed *in forma pauperis* and summarized his allegations as follows:

> On January 20, 2002, while he was confined at FMC-Lexington, the plaintiff's left leg "popped."  Plaintiff originally sought and was afforded treatment by Physician's Assistant Lafleur at the FMC-Lexington Health Services Department.  Lafleur's diagnosis was "muscle spasms." The plaintiff was released with a cane.  Within two hours, the plaintiff's leg had swollen to approximately two-and-one-half times its size.  The plaintiff again saw Lafleur, who diagnosed a blood clot and recommended the plaintiff be transported to the University of Kentucky Hospital

3

Emergency Room "ASAP." At UK, the plaintiff was seen by Drs. Gray and Nicholls. They allegedly diagnosed "torn muscle tendons" (the plaintiff claims it is his Achilles tendon) and recommended that the plaintiff return for re-evaluation by Drs. Gray and Nicholls after ten days of "conservation care." The plaintiff contradictorily claims that Drs. Gray and Nicholls recommended immediate surgery. The plaintiff was returned to FMC-Lexington where, on or about February 1, 2002, he was seen by the "in house Orthro [sic] Surgeon" at FMC-Lexington. The plaintiff was afforded a conservative course of treatment involving a splint cast, crutches, a wheelchair, and pain medication. . . . On February 19, 2002, the plaintiff was transferred to FCI-Manchester, Kentucky.

At FCI-Manchester, the plaintiff was examined by Dr. Gonzalez and P.A. Coldiron. No therapy or surgical treatment was prescribed. Pain medication was prescribed. Coldiron allegedly told the plaintiff that he needed to be seen by an orthopedic surgeon but made no such appointment. . . .

Subsequently [on April 4, 2002], the plaintiff was transferred to FCI-Morgantown, West Virginia. At some undisclosed time while the plaintiff was confined at FCI-Morgantown, he apparently was examined by Dr. Post of Morgantown Orthopedic Surgery & Sports Medicine. Allegedly, Dr. Post corroborated the opinion of Drs. Gray and Nicholls of the University of Kentucky Medical Center that surgery was recommended.

. . . The plaintiff claims that the correct initial treatment for his injury would have been surgery, and the failure to have provided that surgery early on has now resulted in various complications rendering the plaintiff 100% disabled in his left leg. Allegedly, Dr. Conti [another specialist] informed the plaintiff that he should never have been moved out of the University of Kentucky Medical Center without first having been afforded the recommended surgery. The plaintiff claims that presently there is no remedy to correct what is now the plaintiff's permanent injury.

The plaintiff candidly discloses that "the facts after the plaintiff arrived at FCI Morgantown are filed in *Hollis v. Lappin et al.*, Civil Action No. 1:03CV211 in the United States District Court for the Northern District of West Virginia." The plaintiff reports that Magistrate Judge Kaull, of that district, ruled on July 24, 2004, that the plaintiff had stated a claim against unspecified doctors and a warden and BOP Director

4

> Lappin for "deliberate indifference" they allegedly exhibited to the plaintiff while he was confined at FCI-Morgantown.
>
> The petitioner asserts that while he was at FMC-Lexington and FCI-Manchester, he was not afforded needed surgery because primary consideration was given to budgetary constraints over his serious medical need for surgery, and that the decision not to provide him with surgery was not based upon sound medical considerations so much as it was based upon non-medical reasons involving incurring the expense of the recommended surgery.

Record No. 6 at 2-4. In the same order, dated January 24, 2005, this court dismissed Hollis's complaint for failure to demonstrate exhaustion of administrative remedies with regard to either his FTCA or *Bivens* claim. *Id.* The plaintiff filed a motion to alter or amend the judgment, but it was denied on February 4, 2005, and he took no appeal.

With regard to the plaintiff's reference to an action entitled *Hollis v. Lappin* in the United States District Court for the Northern District of West Virginia, the docket of that court shows that the plaintiff filed it, Case No. 03-211, in the Clarksburg Division on September 4, 2003, more than a full year before he filed the No. 04-441 case here. He named as defendants the Bureau of Prisons, BOP officials, FPC-Morgantown medical personnel, as well as FMC-Lexington personnel. His allegations were essentially the same as in this court's prior case, but with additional West Virginia medical personnel as defendants and more allegations about their failure to treat his leg after his arrival in West Virginia.

The West Virginia District Court also construed the plaintiff's action to be under both the FTCA for negligence and *Bivens* for injunctive relief and damages. Upon

5


screening and a Magistrate Judge's initial report and recommendation, on May 25, 2005, the court dismissed all of the Kentucky defendants, including the ones named herein: FMC-Lexington's Mary Thoms, Dr. Vibeke Dawnka, PA Phillip LaFleur, and FPC-Manchester's John Doe Warden, Dr. Gonzales, and PA Coldiron, for lack of personal jurisdiction.

Thereafter, that court also dismissed other medical defendants for the plaintiff's failure to state an Eighth Amendment claim against them individually, and the case was permitted to go forward against the Federal Bureau of Prisons as the proper United States defendant on the FTCA claim; against the treating physician in Morgantown, Dr. Michael Waters, for damages; and against BOP Director Harley Lappin for the injunctive relief sought, *i.e.*, proper treatment.

On July 22, 2005, the three remaining defendants, who were all served and are jointly represented by the United States Attorney for the Northern District of West Virginia, filed a motion to dismiss or in the alternative, motion for summary judgment. Record No. 22. In an accompanying memorandum, the government traces the plaintiff's treatment at FMC-Lexington and also his treatment by the individual defendants at FCI-Morgantown, where Dr. Waters treated him. The United States then argues that the plaintiff has failed to state either an FTCA or *Bivens* claim. With regard to the FTCA, the plaintiff had exhausted the FTCA administrative remedies only about his treatment at FMC-Lexington and he has failed to present the required elements of negligence under Kentucky law; and as to the remaining *Bivens* claim, to

the extent it is exhausted, which is not conceded, the plaintiff has also failed to demonstrate that Dr. Waters was deliberately indifferent to his serious medical needs, the necessary standard for an Eighth Amendment claim. The plaintiff has recently filed a response in opposition to the motion.

## CURRENT ALLEGATIONS

As in this court's previous action and the West Virginia court's current proceeding, the plaintiff's complaint contains his recitation of events regarding his leg from the date of the injury, January 20, 2002, to today. Again, he asserts both negligence and deliberate indifference claims against numerous BOP employees.

This time, in a departure from the previous case in this court, the plaintiff focuses only on the treatment received in Kentucky, at the Lexington and Manchester prisons. Also this time, he attaches exhibits in support of his claims, including the documents exchanged in pursuing his administrative remedies, the FTCA's letter of denial making it clear that he had complained only about FMC-Lexington treatment; and copies of the BOP administrative documents in Remedy No. 275310, showing his dissatisfaction with his treatment after leaving FMC-Lexington and his desire to return to FMC-Lexington in order to go back to the University of Kentucky doctors.

The plaintiff alleges that the BOP's medical staff named herein knew of the necessity of immediate care and the importance of following up with the University's doctors, after the 7-10 days recommended by those doctors, and yet they chose to do virtually nothing helpful. They even shipped him away only a month after the

injury.  He writes,

> As a result, the torn tendons and muscles have been allowed to atrophy to such a degree that to shock the very nature of medicalpractice [sic] and medical care.  Plaintiff Hollis has suffered permanent irreversible damage to his left leg.  To date Plaintiff Hollis has not had surgical intervention and still must wear a Bledso Boot and walk with crutches to gain mobility.

Record No. 1 at 9.

## DISCUSSION

The plaintiff has come to this court too late.  This court cannot proceed to examine the merits of either of his claims, but must dismiss the instant action.

There are two fatal flaws in the plaintiff's FTCA claim.  The FTCA governs circumstances under which the U.S. government consents to tort actions:  "for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b).  It imposes its own statute of limitations, beginning as follows:

> (a)   . . . [E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues . . . .
>
> (b)   A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(a)-(b).  The record shows that the plaintiff, by counsel, filed his FTCA claim about FMC-Lexington's lack of treatment to his January of 2002 injury on November 27, 2002, and the FTCA claim was denied administratively by a February 27, 2003 letter from BOP counsel to the plaintiff's counsel.  Consistent with the

8

statute, the letter ended, "If you are not satisfied with our determination in this matter, you may file suit in the appropriate U.S. District Court not later than six months after the date of mailing of this notification."

The instant action, filed on June 10, 2005, was not filed within that six-month period. Because the June 10, 2005, filing of this case was well beyond the FTCA limitations period,[1] dismissal of the negligence claim is required. An alternative ground for summary dismissal is closely related. By the time the plaintiff filed the instant action, he had already filed the FTCA claim in the Northern District of West Virginia, where it is pending for a decision on the merits. No plaintiff is allowed to shop his claims from court to court in hopes of identical or better results. *King v. South Central Bell Tel. & Tel. Co.*, 790 F.2d 222, 224 (6th Cir. 1986). Under *res judicata*, a final judgment on the merits of an action bars re-litigation between the same parties or their privies on issues that were or could have been raised in that action. *See Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 467 n.6 (1982); *Vinson v. Campbell County Fiscal Court*, 820 F.2d 194, 197 (6th Cir. 1987).

With regard to the *Bivens* claims against the individual defendants also, too much time has passed between the events complained of and the instant filing. The time span in which the Kentucky defendants are alleged to have been deliberately indifferent to his needs to his detriment is a short and easily measurable one. The FMC-Lexington defendants acted or failed to act from the date of the plaintiff's injury,

---

[1] Although not necessary to the disposition of the instant case, the court notes that the plaintiff's prior case in the Eastern District of Kentucky, No. 04-441, was filed on October 1, 2004, which is 18 months after the denial of his claim and thus outside the statute of limitations also.

9

January 20, 2002, until less than one month later, the plaintiff arriving at FPC-Manchester on February 19, 2002.  Then he was at the Manchester prison only from February 19th to April 9th of 2002, when he arrived at FCI-Morgantown, a period of only 6 weeks.  The instant action was filed more than 3 years later, on June 10, 2005.

Federal courts will look to state law for the statute of limitations.  Courts have applied *Wilson v. Garcia*, 471 U.S. 261 (1985), to *Bivens* actions by stating that the statute of limitations applicable to *Bivens* claims is the state statute of limitations for personal injury.  *Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991).  The Kentucky statute of limitations for personal injuries under the federal Constitution is one year after the cause of action accrues.  K.R.S. 413.140; *see also University of Kentucky Bd. of Trustees v. Hayse*, 782 S.W.2d 609 (Ky. 1989), *cert. denied*, 497 U.S. 1025 (1989) and 498 U.S. 938 (1990); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (citing *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990)).

Under federal law, a claim accrues when the plaintiff knows, or has reason to know, of the injury which is the basis of the action.  *Bagley v. C.M.C. Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991), *cert. denied*, 112 S.Ct. 1161 (1992); *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986), *cert. denied*, 479 U.S. 1054 (1987).

Under the instant plaintiff's own allegations, he knew as early as the end of January, 2002, when he was not taken back to the University Hospital, that he would not get the treatment the outside doctors purportedly recommended.  Perhaps it was

10

as late as May of 2002 when he began the administrative remedy process.  Yet, in either instance, he did not file any action in this court until October 1, 2004, and then again on June 10, 2005, several years after the running of the one-year period.  It is true that the statute is tolled during a plaintiff's required use of the administrative remedy process. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).  However, even allowing for the tolling of the statute during the instant plaintiff's use of the BOP administrative processes, in Remedy Number 275310, from May 29, 2002, until November 5, 2002,[2] still the court finds that the 2005 *Bivens* claims herein are clearly time-barred.  Therefore, as with the FTCA claims, dismissal of these claims is also appropriate.  28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the instant action is **DISMISSED WITH PREJUDICE**, and a contemporaneous judgment shall be entered in favor of the defendants.

Signed on August 29, 2005

---

[2] This court does not find that any claim against any defendant was exhausted in the plaintiff's use of the BOP administrative process, as that matter is currently before the United States District Court for the Northern District of West Virginia. The court only offers that if any claim were exhausted during those administrative proceedings, the tolling of the time for filing a federal lawsuit resumed upon completion of the administrative efforts, in this case, on November 5, 2002. This date is 2 ½ years before the filing of the instant lawsuit (and 2 years prior to the filing of 04-441 in this court).

11

12

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY